Doles v. Hilton et al.

---

DOLES v. HILTON ET AL.

INFANTS: *Power of probate court to remove disability of.*

The statute which authorizes the removal of the disabilities of minors applies only to such minors as are capable of attending to their own business; and an order of the probate court removing the disabilities of a minor under the age of fourteen years is void.

APPEAL from *Lincoln* Circuit Court.

Hon. JOHN A. WILLIAMS, Judge.

*D. H. Rousseau,* for appellant.

The question is, had the probate court, under *Mansf. Dig., sec. 1362,* power to remove the disabilities of the minors, and is the act constitutional? The court certainly had jurisdiction, and the order was not a nullity. It might have been voidable but not void; it was a judgment of a court of competent jurisdiction, and could not be attacked collaterally; it should have been assailed either by

Doles v. Hilton et al.

a direct proceeding or appeal. As long as the judgment stands it is the judgment of a court of competent jurisdiction *11 (Ark., 519; 12 ib., 84)*; and cannot be attacked collaterally. *19 Ark., 499; 31 ib., 31; 25 ib., 52; 13 ib., 177.*

There is nothing in the constitution of 1868 to prohibit the passage of the act. Section 5, article 7, clothed the legislature with power to pass the act, and this court will not question the expediency or inexpediency of it.

*Harrison & Harrison*, for appellees.

The order of the probate court removing the disabilities of appellees was a nullity. They were manifestly incompetent "to transact business in general." The legislature never contemplated any such absurd act, and never intended to confer any power to do it.

In construing statutes the real intention will always prevail over the letter, especially when the latter would lead to palpable injustice, contradiction and absurdity. *1 Kent's Com., 462; 1 Black. Com., 59–62; 8 Coke, 118 a; Bac. Abr. Statute (1); Potter's Dwan. on Stat., 184 et seq.; 16 Gratt., 9; 35 Ark., 56; 34 ib., 264.*

Even if the deed was only voidable, the infants had the right to avoid it after arriving of age, and this they did by bringing this suit. Mere acquiescence after they became of age, and the failure sooner to sue, was not a confimation of it. *10 Pet., 58; 11 Johns., 442–3; 11 Serg. & R., 311; 15 Mass., 220; 3 M. & Selev., 482; Ewell's Lead. Cases, 128.*

BATTLE, J. John I. Matthews departed this life intestate, seized in fee of a certain tract of land in Lincoln county, in this state, and left Willis G. Hilton, Ida Johnson and Mattie Lettish, his children and only heirs at law, him surviving.

Doles v. Hilton et al.

These heirs and children were minors when their father died. During their minority they applied to the Lincoln probate court for an order to remove their disabilities as minors, so as to allow and empower them to sell and convey their interest in this tract of land. The Lincoln probate court, at its April term in 1872, granted this application, and made an order according to the prayer thereof. At the time this order was made they were, respectively, twelve, ten and seven years of age. About this time they sold and conveyed the land to Moses DeBaunne and Mort M. Mesler. After they arrived of age they brought this action against Carlton Doles to recover the possession thereof. Doles answered and claimed title and possession through DeBaunne, Mesler and plaintiffs. Plaintiffs recovered judgment for the land, and defendant appealed.

The only question in the case is, was the order of the Lincoln probate court a valid order?

Section one of the act, under which this order was made, reads as follows:

" That the court of probate in and for the several counties in this state shall have power, in its discretion, to authorize any person who is a resident of the county, and who is under twenty-one years of age, to transact business in general, or any particular business specified, in like manner and with the same effect as if such act or thing was done by a person above that age, and every act done by any person so authorized shall have the same force and effect in law and equity as if done by a person of full age; and *letters testamentary or of administration or guardianship,* may be granted to any such person, if otherwise entitled by law, to have and to hold such fiduciary trust with like effect as if granted to a person over twenty-one years of age."

In the construction of all statutes the real intention of

the law-giver, when accurately ascertained, should prevail over the literal sense of the terms. The intention is to be deduced from a view of the whole, and of every part of a statute, taken and compared together, and from other statutes in *pair materia*. "If the language," said this court in *Reynolds v. Holland, 35 Ark., 59*, "be plain, unambiguous and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the court cannot give it a different meaning to subserve a public policy, or to maintain its constitutional validity. The question for the courts is not what would be wise, politic and just, but what did the legislature *really mean to direct*. This narrow circle embraces and cicumscribes the whole ambit of the court, although within that it may move very freely in catching the intention. It may disregard the literal meaning of words, when it is obvious from the act itself the use of the word has been a clerical error, or that the legislature intended it in a sense different from its common meaning."

Mr. Blackstone, in speaking of the rules of interpretation of laws, says: "The fairest and most rational method to interpret the will of the legislator is by exploring his intentions at the time when the law was made, by signs the most natural and probable. And these signs are either the words, the context, the subject matter, the effects and consequence, or the spirit and reason of the law."

Again he says: "As to the *effects and consequences*, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we mnst a little deviate from the received sense of them. Therefore the Bolognian law, mentioned by Puffendorf, which enacted 'that whoever drew blood in the streets should be punished with the utmost severity,' was held after long de-

bate not to extend to the surgeon who opened the vein of a person that fell down in the street with a fit.

"But, lastly, the most universal and effectual way of discovering the true meaning of a law when the words are dubious, is by considering the *reason and spirit* of it, or the cause which moved the legislature to enact it. For when this reason ceases, the law itself ought likewise to cease with it. An instance of this is given in a case put by Cicero, or whoever was the author of the treatise inscribed to Herenius. There was a law that those who in a storm forsook the ship should forfeit all property therein, and that the ship and lading should belong entirely to those who staid in it. In a dangerous tempest all the mariners forsook the ship except only one sick passenger, who, by reason of his disease, was unable to get out and escape. By chance the ship came safe to port. The sick man kept possession, and claimed the benefit of the law. Now, here all the learned agree that the sick man is not within the reason of the law, for the reason of making it was to give encouragement to such as should venture their lives to save the vessel; but this is a merit which he could never pretend to, who neither staid in the ship upon that account, nor contributed anything to its preservation." *1 Blackstone's Com., 58, 60.*

It is obvious that the act authorizing the removal of disabilities of minors was only intended to apply to such minors as are capable of transacting their own business. The object of the common law in making minors incapable of binding themselves absolutely and irrevocably by contract is to protect them from improvident engagements; but inasmuch as there are minors capable of making intelligent and beneficial contracts and managing their own affairs, the legislature in its wisdom saw fit to authorize the probate and circuit courts to remove the disabili-

1. Removing disabilities of infants.

ties. of such minors. Its intention was to authorize the removal of disabilities only in those cases where the lim-. itation upon the capacity of the minor to contract worked a hardship, and the reason for the limitation does not exist. If such had not been its intention its object could and would have been more easily accomplished by an act removing the disabilities of all minors. The policy of the law is to protect all persons incapable of conducting their own affairs and estates. The statutes make it the duty of the probate court to appoint guardians to take the care, custody and management of idiots, lunatics, habitual drunkards and persons of unsound mind, who are incapable of conducting their own affairs and estates. There is no reason why an infant in like condition should be made an exception.

But it is insisted by appellant that while it is obvious that this was the intention of the legislature, the Lincoln probate court was vested with jurisdiction, and its order removing the disabilities of plaintiffs cannot be called into question in a collateral proceeding. If this be true, a probate court, while the constitution of 1868 was in force, might have removed the disabilities of an infant in his swaddling clothes and appointed him an administrator or guardian, with the control of large estates, and such orders would have been valid in all collateral proceedings until set aside in a direct proceeding, notwithstanding all the facts appeared of record. For the purpose of his contentions, appellant assumes that the probate court had jurisdiction to make such orders. Is he right?

We have seen that the intention of the legislature was to empower the probate court to remove the disabilities of those minors, and no others, who are capable of making contracts and controlling their own affairs and estates; and that in construing the act in question, we must con-

Doles v. Hilton et al.

strue it in connection with other statutes upon the same subject. Under the statutes of this state an infant under twelve years of age is incapable of committing crime; under ten he is incompetent to testify; and under fourteen is not qualified to select his own guardian. These are conclusive presumptions of law. Evidence is not admissible to remove them. Is it therefore reasonable to presume that the statutes of this state intended that a probate or circuit court should have jurisdiction to remove the disabilities of a minor under fourteen years of age, and thereby qualify him to become an executor, or administrator and guardian, when before the removal of his disabilities he was presumed to be incompetent, and was incapable of selecting his own guardian? There is but one answer to the question. It is contrary to all reason to suppose that the intention of the act in question was to authorize any court to empower a minor under fourteen to do an act requiring a higher qualification to do than an act he is presumed, under the statute, to be incompetent to perform. Construing all the statutes on the subject together, and governed by the manifest intent of the act in question, we conclude that no court has or had the authority, under the act in question, to remove the disabilities of a minor under fourteen years of age.

The Lincoln probate court undertook to remove the disabilities of plaintiffs when they were, respectively, seven, ten and twelve years of age, so as to empower them to sell and convey a valuable tract of land. These facts are stated in the record, in the application made by the plaintiffs to the court. The order removing their disabilities is, therefore, void.

The judgment of the court below is affirmed.