### TAYS v. JOHNSON.

Opinion delivered March 7, 1927.

1. INFANTS—AGE—EVIDENCE.—Evidence *held* to show that a female plaintiff seeking to cancel deeds executed during minority was only 14 years old at the time first deed was executed.

2. INFANTS—REMOVAL OF DISABILITIES—INVALIDITY.—Under Crawford & Moses' Dig., § 5744, providing that disabilities of a female

minor under the age of 16 years cannot be removed, *held* that, where the evidence showed that plaintiff was less than 16 years of age when she executed two deeds, a previous order of court removing her disabilities was unauthorized, and she had a right to rescind and disaffirm the deeds at her majority.

3. INFANTS—RESTORATION OF CONSIDERATION.—A female minor seeking to cancel deeds executed by her when she was under 16 years of age need not restore the consideration received by her.

4. INFANTS—DISAFFIRMANCE OF DEEDS—RECOVERY OF RENTS.—In a suit by a minor to disaffirm her deeds executed during minority, she is entitled to rents from date of disaffirmance, which was the commencement of the suit.

5. INFANTS—DISAFFIRMANCE OF DEEDS—RIGHT OF GRANTEE TO TAXES AND IMPROVEMENTS.—In a suit by a minor to cancel deeds executed during minority, the grantee was entitled to set off taxes, repairs and improvements against plaintiff's claim for rents, and if the amount of such taxes, repairs and improvements is in excess of the rents, the grantee will be entitled to a judgment for the excess.

6. INFANTS—DISAFFIRMANCE OF DEEDS—VALUE OF IMPROVEMENTS.— The measure of the value of betterments is not their actual cost but the enhanced value they impart to the land, without reference to the fact that they were desired by the owner, or could not be profitably used by him.

Appeal from Woodruff Chancery Court, Southern District; *A. L. Hutchins,* Chancellor; reversed.

STATEMENT BY THE COURT.

Appellant is the daughter of W. V. Watson, who died intestate on or a short time prior to the 24th day of December, 1907, and is his only child and heir at law. Her mother died prior to the death of her father, in January, 1907. Her father was the owner of a house and ten acres of land in the Southern District of Woodruff County, which appellant inherited on his death. In her complaint she states that she was born on June 3, 1904, near Cotton Plant, Arkansas, and that, after her father's death, she lived with one T. J. Hanley, until a short time before she married her husband, Rodney Tays; that the appellee, P. S. Johnson, on the 21st day of June, 1918, when she was but fourteen years of age, procured her to execute to him a warranty deed to the

lands which she inherited from her father, and that the appellee, on the 18th day of August, 1920, when she was but sixteen years of age, procured her to execute another deed to him to the same lands; that there was no consideration for same, and that she was a minor when she executed each of said deeds, and that same are void and a cloud upon her title. She asks for a cancellation of the deeds and judgment against appellee for the use of the lands in the sum of $500 per year from June 21, 1918. The defendant entered a general denial, and alleged that the appellant was born on the 3d day of June, 1902; denied that appellee procured the execution of the deed in 1918, but that appellant solicited and procured the defendant to purchase the property under certain conditions set out in the answer; that, prior to the execution of said deed on June 21, the appellant secured the removal of her disabilities before the circuit court in the Eastern District of Craighead County, at Lake City, on petition of appellant, setting up all the necessary allegations to secure an order of removal of disabilities; that the court granted the petition and removed her disabilities as a minor and clothed her with authority to transact business, and that thereafter she executed the deed to the property in controversy for a consideration of $3,000, which was actually paid to her; that the appellant, if her complaint is true, practiced a fraud upon the appellee, and, through such fraud, procured from him the sum of $3,000 which was paid to her. Appellee made his answer a cross-complaint, and states that the property purchased by him was in a bad state of repair, and that the rental value thereof would barely pay the taxes and keep up the repairs; that, for the years he has been in possession as owner of the property, he had paid out approximately the sum of $450 in taxes, and that he has expended by way of improvements on same not less than $1,500, making a total of $1,950; which he is entitled to recover from appellant in the event she is successful in this suit.

Later appellee filed an amendment to his answer, which is not necessary to set out here.

Appellant was adopted by Mr. and Mrs. T. J. Hanley shortly after her father's death, and lived with them until she was married to a man named Tays. She was not related to the Hanleys, and, being very young when they took her, she apparently had no recollection of what transpired prior to her adoption by these people. The principal question presented for decision in this case is, was the appellant born on June 3, 1904, or June 3, 1902? Since this is to be determined only from an examination of the evidence, we will now proceed to do so.

Appellant testified that she was born on June 3, 1904, basing her statement upon what others had told her, including her uncle and aunt.

Mrs. Donnie Mitchell, the widow of Doc Mitchell, who was an uncle of appellant, testified that appellant's mother had died prior to the death of her father, and that appellant was born on June 3, 1904; that she was living about two miles from Mr. Watson when appellant was born, and that she had a daughter, Bessie, who was born just two months later, on the 3d of August; that she was at appellant's home a few hours after her birth, and naturally remembered that her daughter, Bessie, was born just two months to a day later; that both families were living on the York place, near Cotton Plant, at the time of her birth, about two miles apart; that her daughter, Bessie, was 20 on the 3d of August; that she has a family record of the birth of that daughter which shows her age; that they had a family Bible in which her husband, who had been dead about five years, had written the names and ages of their children; that, before appellant's father died, he sent them his family Bible, and that her husband wrote in this Bible the names and ages of appellant and her brothers and sisters; that these pages show that Bessie Lee Mitchell was born August 3, 1904, and that Birdie Lou Watson, appellant, was born June 3, 1904.

It is not denied that Doc Mitchell wrote the names and ages of these children in the Bible, and his handwriting was identified, nor that he had been dead about five years.

Mrs. R. R. Terry testified that she is the widow of J. M. York, on whose plantation appellant's father was married and appellant was born. She says that she knew appellant's father intimately before his marriage, as he was working there on the place for her husband, and he continued to live on the place after he was married; that, at the time appellant was born, she had rented the place to Mr. Watson, and was living in Forrest City; that she was not present at the birth, but was there a short time later, and spent two weeks. She testified positively, in answer to a question if she remembered when she was born, that "she was born in June, I don't know the day of the month, it was in June, 1904."

Carrie Williams, appellant's aunt by marriage, states that she had been living near Cotton Plant for many years, and that, at the time appellant was born, she was living on the York place about one mile from the Watsons; that appellant was born on June 3, 1904, and she remembers the date because her aunt had a daughter born two months to the day later. Her aunt was Mrs. Donnie Mitchell, the wife of Doc Mitchell, with whom she lived, and that she remembered the date of Bessie's birth to the hour; that she has seen the handwriting of Doc Mitchell in the family bible, and knows that he wrote the names and ages of his children and of Will Watson's, as shown therein.

Mark Carter testified that the appellant was born in 1904, in the spring or summer; that he does not remember the day or day of the month; that he was able to remember on account of his oldest boy being born in the fall after she was born in the spring; that he was living on the Squire Davis farm at the time of her birth, about five miles from Will Watson's home.

D. I. Carter testified that he had been living around Cotton Plant for the last thirty-five years, worked for

Will Watson for three years before appellant was born, and worked for him shortly afterwards; that appellant was born in 1904; that he made a crop there in 1903, left and moved up in Monroe County, came back to Cotton Plant and worked with his father, and went down to Mr. Watson's house in July, 1904, to get a job with him, which he did, and that appellant was a small baby, about a month old, at that time.

In addition to this, on the 24th day of April, 1911, T. J. Hanley filed a petition to be appointed as guardian for Birdie Lou Watson, in which he stated that she was six years of age, and in the bond accompanying the petition is the statement that Birdie Lou Watson was six years of age. This petition was filed on the 24th day of April, 1911, in the office of the clerk of the Woodruff Probate Court, and approved on that date. There is in evidence another petition signed by T. J. Hanley to be appointed guardian of appellant, dated the 16th day of April, 1908, in which he swore that she was only three years of age. It also appears in evidence that letters of guardianship were issued by the clerk of the Woodruff probate court to M. Z. Mitchell, in which it is stated that appellant was under five years of age, and this is dated January 6, 1908.

The testimony of appellee on this question, first by T. J. Hanley, who testified that he had known appellant since 1907, was living at Hunter at the time he obtained her from Doc Mitchell, and that Doc Mitchell told him at the time he got her she would be five years old the 3d day of June, and that Col. Decatur York went with him to Mitchell's to get her, and told him she was five years old on her birthday; that, about two years after this, he was appointed her guardian; that she went to school two years, two seasons, and after that he moved to Monette, where she went to school four straight years, and after that went to Paragould, where she went to school two years, and from Paragould to North Little Rock, where they stayed only four months, and from North Little Rock they went to Faulkner, Mississippi,

and stayed three months, and then bought a place and stayed there nearly four years; that he went from Paragould to Tuckerman, where she went to school eight months, and went back to Paragould, where she finished up her schooling, the last time, a year; that he moved to Mississippi in December, 1918, from North Little Rock, and from Mississippi back to Monette, and visited around about a year from one place to another. Appellant went to school at Faulkner, Mississippi, one year, and after she got out of school there she went to Calgabet Agricultural School, where she went three years, graduated, and received her diploma. After this she went to normal at Corinth one time, and at Booneville one time. These normals were six weeks.

Mrs. T. J. Hanley testified that they were living at Hunter at the time appellant came to live with them, and that, apparently, when she came there, she was five years old; she looked to be five, anyway, and that she was large enough to go to school one year from the time they got her. With respect to her schooling and the different places they lived, her testimony is somewhat corroborative of that of her husband, T. J. Hanley.

On cross-examination she testified that Col. York told them appellant was five or six years old about the time they took her; that, after they took her, they kept her two years behind her actual age because they wanted to keep her as long as they could, and never told her her age until this lawsuit came up; that she always thought she was born in 1904 until this matter came up.

Mr. O. H. Hurst, an attorney at Monette, testified that he was employed by Mr. Hanley to have appellant's disabilities removed, so that she could execute a deed to the appellee to the lands involved in this action, which was in 1918; that the data upon which he based the petition, which he later filed, was given by members of the family. She said at the time she was 16, but, at the time her petition was filed, she was past 16. When the petition was filed the appellant, Mr. and Mrs. Hanley, were all present. The court examined all of them, and the

petition was granted and her disabilities were removed by the order of the court. Witness thought she was telling him her correct age when she stated she was 16.

Appellee, P. S. Johnson, testified that he knew Will Watson, father of appellant, and that he rented the place in controversy from him and moved on the property on the 18th day of March, 1907, and at that time appellant was a good-sized child running around the place, and that he would judge her to have been five or six years old.

*Bogle & Sharp,* for appellant.

*Roy D. Campbell,* for appellee.

McHANEY, J., (after stating the facts). This is substantially all the evidence on either side regarding the age of appellant, and we are convinced that the overwhelming weight of the evidence shows that appellant was born on June 3, 1904, and that therefore appellant was only fourteen years of age when she signed the first deed in question, June 21, 1918, and that it is voidable at her instance, unless the circuit court had the right to and did remove her disabilities.

Section 5744 of Crawford & Moses' Digest provides that circuit courts shall have the power to remove the disabilities of a female person who is a resident of the county, and above the age of sixteen years.

The judgment of a circuit court removing the disabilities of a female minor under the age of fourteen years is void and is open to collateral. attack. *Doles* v. *Hilton,* 48 Ark. 305, 3 S. W. 193.

Referring to the decision in *Doles* v. *Hilton, supra,* this court, in *Dalton* v. *Bradley Lumber Co.,* 135 Ark. 392, 205 S. W. 695, said: "The necessary effect of this decision is that no testimony could have been heard or showing made which would have authorized the court to remove the disabilities of these minors, and the action of the court in doing so was *coram non judice.* The proceeding is as void as if there had been no statute on the subject, because the statute has no application to minors under the age of fourteen."

The statute has, since this decision, been changed to fix the age limit of females at sixteen years, at which their disabilities may be removed.

We cannot therefore agree with appellee in stating. that the facts and circumstances shown by the testimony in this case, when viewed from any reasonable and impartial standpoint, disclose conclusively that the appellant was not less than sixteen years of age when her disabilities of minority were removed, but, on the contrary, we are convinced that the overwhelming weight of evidence was to the effect that she was only fourteen years of age, and that the act of the circuit court in removing her disabilities at such age was *"coram non judice."*

If therefore the act of the circuit court in making an order removing her disabilities. when she was only fourteen years of age was void, which we now hold, it follows- that the deed she executed on the 21st day of June, 1918, was voidable, as was also the second deed she executed on the 18th day of August, 1920, for on that date she was only sixteen years, two months and fifteen days old, and that therefore she had the right to rescind and disaffirm her deeds to said property, which she did by the bringing of this action within the time prescribed by law, after arriving at her majority.

The next question for determination is whether appellant must restore the purchase price of $3,000 on the cancellation of her deeds. We hold, under the evidence in this case, she is not required to do so. This court, as was said in the case of *Arkansas Reo Motor Car Co.* v. *Goodlet,* 163 Ark. 35, 258 S. W. 975, is firmly committed to the rule "that an infant may disaffirm his contracts, except those made in the course of his necessities, notwithstanding the other parties may be unaware of the infant's disabilities, and without requiring the infant to return the consideration received, except such part as may remain in specie in his hands."

In the case of *Bickle* v. *Turner,* 133 Ark. 536, 202 S. W. 703, this court said: "It is insisted, however, that, even if the court erred in this respect, the relief asked for by

appellant should not be granted unless there is a restoration of the consideration. The evidence shows that the infant had spent the money received by him for the land, and if he should be required, under such circumstances, to restore the consideration as a prerequisite to avoid the contract, the protection given to an infant by the disabilities of minority would be seriously impaired and might often be destroyed. The reason that the contracts of a minor are voidable is because he is supposed to be improvident and likely waste what he has received." *Beauchamp* v. *Bertig*, 90 Ark. 531, 119 S. W. 75, 23 L. R. A. N. S. 659; *St. L. I. M..& S. R. Co.* v. *Higgins*, 44 Ark. 939; *Stull* v. *Harris*, 51 Ark. 294, 11 S. W. 104; *Fox* v. *Drewry*, 62 Ark. 316, 35 S. W. 533; *Tobin* v. *Spann*, 85 Ark. 556, 109 S. W. 534, 16 L. R. A. N. S. 672; *Barker* v. *Fuestal*, 103 Ark. 312, 147 S. W. 45.

The only remaining question for consideration, in addition to the cancellation of the deeds executed by her while she was yet a minor, is the matter of an accounting between appellant and appellee as to the rents and profits due to her, and the taxes, repairs and improvements paid out by him. As was said by this court in *Tobin* v. *Spann*, 85 Ark. 556, 109 S. W. 534: "The contract of an infant is not void, but only voidable. He is therefore only entitled to a judgment for rents from the date of his disaffirmance of the contract. In this case the disaffirmance was the date of the commencement of the action."

This is likewise true in this case. Appellant is only entitled to the rents from the date of her disaffirmance of the deeds, which was the date of the commencement of this action. *Brown* v. *Nelms*, 84 Ark. 404, 112 S. W. 373; *Beauchamp* v. *Bertig*, 90 Ark. 371, 119 S. W. 75; *Arkansas Reo Motor Car Company* v. *Goodlett*, 163 Ark. 39, 258 S. W. 975.

As was also held in *Tobin* v. *Spann*, and in numerous other cases, under the betterment act, appellee is entitled to taxes, repairs and improvements, and he may offset these with rents accruing since the bringing of this suit.

The decree of the chancery court is therefore reversed, and the cause is remanded with directions to enter a decree canceling the deeds executed by appellant on the 21st day of June, 1918, and upon the 18th day of August, 1920, and to determine the amount of rents accruing since the bringing of this action, and to offset same with the taxes, repairs and improvements expended by him on said property.

McHANEY, J., (on rehearing). We adhere to our original opinion in this case, but counsel suggests that the opinion should be so modified as to more clearly state the rule governing the right of appellee to recover for repairs, taxes and improvements.

We thought we had made it definite and certain in the original opinion, but, in order that there may be no misunderstanding, we state it here again, that the appellant is entitled to recover rents from the date of her disaffirmance of the deeds, which was the date of the commencement of this action; and that the appellee is entitled to recover all of the taxes he has paid, repairs and improvements; and if the amount of taxes, repairs and improvements is in excess of the rents, appellee would be entitled to a judgment against appellant for the excess. As to what is meant by the term "repairs and improvements," this court has said, in the case of *Greer* v. *Fontaine,* 71 Ark. 608, 77 S. W. 57, that "the measure of the value of betterments is not their actual cost, but the enhanced value they impart to the land, without reference to the fact that they were desired by the true owner, or could not be profitably used by him." Bouvier's Law Dictionary. Continuing, the court said: "This definition is that given substantially in all jurisdictions having statutes like ours. Sometimes we say the improvements must be permanent, and not merely temporary. The idea seems to pertain that the improvements are such as will add to the value of the land as it shall come into the occupancy and use of the true owner, for he is the person required to pay for them, although they have been made without his consent."

The lower court will therefore determine the amount appellee is entitled to for taxes, repairs and improvements, and subtract from that the amount appellant is entitled to for rents, and render judgment for appellee for the excess.

The petition for rehearing is denied.