WIMBERLEY GROCERY COMPANY *v.* BORDER CITY
BROOM COMPANY.

Opinion delivered December 15, 1924.

1. ASSIGNMENTS—ISSUES AND PROOF.—In an action by an assignee of an account for goods sold against the debtor, who had paid the account to the assignor after notice of the assignment, testimony to the effect that the assignee had assumed the obligations of the assignor was incompetent where the answer did not allege such defense.

2. ASSIGNMENTS—DEFENSE.—In an action on an account by an assignee against the debtor, where the debtor paid the assignor after notice of assignment of the account, the fact that credit was not to be given the account of the assignor by the assignee until the account against the debtor was collected by the assignee did not affect the validity of the assignment.

3. ASSIGNMENTS—EVIDENCE.—In an action by an assignee of an account against the debtor, evidence that the assignee knew of the payment of the account by the debtor to the assignor was inadmissible where the witness did not state when the assignee learned that fact.

4. ASSIGNMENTS—EVIDENCE.—Where a debtor paid to the assignor. after notice of assignment to plaintiff, evidence that part of the amount paid to the assignor was remitted to the assignee was irrelevant where the amount remitted and the account on which it was paid were not stated.

5. CUSTOMS AND USAGES—ISSUES, PROOF AND VARIANCE.—The contention of a debtor, who had paid an account to an assignor after notice of assignment of the account, that there was a trade custom between the assignor and assignee, whereby the former collected assigned accounts and remitted to the latter will not be considered in an action by the assignee against the debtor where it was not pleaded in the answer.

6. ASSIGNMENTS—SUFFICIENCY.—Where an invoice of a shipment contained a notation that it was payable to the plaintiff as assignee of the account, this was sufficient to vest the property in the plaintiff, and subsequent payment to the assignor was at the debtor's peril.

Appeal from Craighead Circuit Court, Jonesboro District; *G. E. Keck,* Judge; affirmed.

*A. P. Patton,* for appellant.

The court erred in holding that there was an assignment of the contract. 5 Corpus Juris 912, § 79; 14 Wall.

69; 20 U. S. (L. ed.) 762; 65 N. W. 501. The testimony of Carson should have been submitted to the jury. 5 Corpus Juris, p. 966, § 152. The court erred in instructing a verdict in favor of appellee. *Ray* v. *Arkansas Fertilizer Co.*, 162 Ark. 508.

*E. L. Westbrook* and *Rassieur & Long,* for appellee.

An unqualified assignment of a chose in action vests in the assignee the title thereto held by the assignor. 5 C. J. 958. No particular mode or form is necessary to effect a valid assignment. 35 Fed. 440; 29 S. E. 44; 40 L. R. A. 244; 5 Ark. 536; 5 C. J. 897. The suit was properly brought. 151 Ark. 207; 47 Ark. 541.

SMITH, J. A copartnership doing business under the firm name of the Border City Broom Company of Fort Smith, hereinafter referred to as the Fort Smith company, brought suit for the benefit of the Boggs Broomcorn Company, of St. Louis, hereinafter referred to as the St. Louis company, against the Wimberley Grocer Company, a corporation engaged in business in Jonesboro, hereinafter referred to as the grocer company, and at the trial the following facts were developed:

The Fort Smith company sold the grocer company a carload of brooms, for which an invoice was rendered October 20, 1921. The invoice price of the brooms was $2,495.50, but there were certain discounts and credits, which reduced the bill to $2,058.77, and judgment was prayed for that amount. The invoice contained this notation: "This invoice payable to the Boggs Broomcorn Company, St. Louis, Mo." Mr. Wimberley, the president of the grocer company, admitted that he saw this notation on the invoice when it was received.

On November 11, 1921, the St. Louis company wrote the grocer company that the invoice had been assigned to and was payable to it, and the letter concluded with this inquiry: "For our information kindly advise us when we may expect payment of this invoice." The grocer company replied to this letter under date of November 15, and in this letter stated: "Beg to advise that we expect to mail check about the 20th."

. On October 28, 1921, the grocer company bought more brooms from the Fort Smith company, the invoice price of which was $186.87, and this invoice included the former bill, making a total of $2,245.54, and contained no notation that the bill was to be paid to the St. Louis company.

Certain credits were claimed by the grocer company on the first invoice, in addition to those noted there, and these were conceded by the Fort Smith company, and, on November 7, that company wired the grocer company as follows: "We will allow deduction as shown by your invoice to us. Remit to St. Louis as per our notation on invoice."

On November 29, 1921, the Fort Smith company wired the grocer company the following inquiry: "Please advise when you sent draft covering invoice sent you."

On December 3, 1921, the Fort Smith company wired the grocer company as follows: "Have not received check which you stated you would send. Please have your bank wire City National Bank of this city that they will honor our draft for the full amount of our invoices, less your charges. Please state this amount in the telegram. This is very important."

In response to this telegram the grocer company remitted to the Fort Smith Company the amount of both invoices, less the total amount of all credits claimed.

Nothing further appears to have been done about the matter until June 20, 1922, when the St. Louis company wrote the grocer company reminding the latter of the promise contained in the letter of the latter to remit on or about November 20. This letter was answered by a letter from the attorney of the grocer company, advising that, at the direction of the Fort Smith company, remittance had been made to that company, thereby paying the bill. This letter denied liability, and declined to pay the bill a second time.

Thereafter this suit was commenced, and the complaint set out the above correspondence, both by telegraph

and by letter, as the basis of the suit, and judgment was prayed for the original amount of the first invoice.

The grocer company answered and admitted the purchase of the brooms and the correspondence in regard thereto, but denied that the invoice had been assigned to the St. Louis company or that it had knowledge of its assignment. The answer further alleged that, at the request and insistence of the Fort Smith company, remittance had been made to that company in full payment of the bill. Upon these allegations the grocer company denied liability to the St. Louis company, and filed a counterclaim against the Fort Smith company in the following language: "For its counterclaim herein against Border City Broom Company and its individual copartners mentioned in the caption hereof and of the complaint herein, this defendant, in addition to all of the allegations and admissions hereinbefore made, says that the amount of said invoice was paid to the said Border City Broom Company at its special instance and request, and that if plaintiff, Boggs Broomcorn Company, recover against this defendant, then that it should have judgment against said Border City Broom Company."

The answer concluded with a prayer that the grocer company be discharged with its costs, but that, if the St. Louis Company recovered judgment against it, it have judgment over against the Fort Smith company.

The deposition of C. B. Carson was taken on interrogatories. This witness was one of the partners composing the Fort Smith company, and was its manager. After certain preliminary questions, he was asked if his company had requested the grocer company to forward draft to it covering both invoices, and he answered: "A. We did, with the intention of sending Boggs' part to them and keeping the smaller invoice, which was not assigned to them, for ourselves."

Interrogatories 6, 7, 8, 9 and 10 propounded to the witness Carson were excluded by the court, on motion of the plaintiff, for the reason that they were not relevant to any issue raised by the pleadings, and this action is assigned as error.

The answers elicited by these interrogatories were to the following effect: The Fort Smith company was heavily indebted to the St. Louis company, and the proceeds of the assigned invoice were to apply on account. Part of the proceeds of the grocer company's draft paying the invoice were used for the Fort Smith company's payroll. Part was either paid to the St. Louis company or applied on an acceptance due that company. Being asked what part of the proceeds of the grocer company draft the St. Louis company had received, the witness answered that he could not remember, as the transaction was two years old. Being asked if the St. Louis company was advised of this transaction and if it had been handled in accordance with its wishes, and whether any complaint had been made about the transaction prior to June 15, 1922, at which time witness severed his connection with the Fort Smith company, the witness answered: "A. They knew we received this check and that we used a part for payroll, and the balance was applied either on an acceptance or paid direct to them."

Interrogatory 9 reads as follows: "State if there was an assignment by the Border City Broom Company to the Boggs Broomcorn Company of St. Louis on or about the 15th day of April, 1922." The witness answered: "A. There was."

Interrogatory 10 is as follows: "State if there has recently been an instrument signed by the Boggs Broomcorn Company releasing the Border City Broom Company from any and all further known liability with reference to any claim it might have against said company or any member of the partnership composing the Border City Broom Company. If you state that such an instrument has been executed, will you please attach copy of same as an exhibit to your deposition." To this the witness answered: "A. There was an instrument signed which released the partners from any further liability from the debts of the Border City Broom Company, Boggs agreeing to pay all indebtedness which had shown up at that time. I do not have this with me, but same

may be procured from W. B. Boone at Fort Smith, Arkansas.''

The witness did not attach the assignment referred to by him as an exhibit, as he was directed to do, and we know nothing about its provisions, except the statement contained in the answer of the witness.

We think the court did not err by striking out these interrogatories and the answers thereto. They were not responsive to any defense set up in the answer. The answer did not allege that the St. Louis company had assumed the obligations of the Fort Smith company, and there was no request for permission to so amend the answer as to make this allegation. If this testimony had been admitted without objection, the answer might have been treated as amended to conform thereto, but objection was made to the testimony, the objection being that it was irrelevant, and there was no amendment of the answer making the testimony relevant.

Moreover, the witness makes plain a fact—which is otherwise perfectly clear— that the invoice was assigned, and that this was done at the time of the sale. True, he says credit was not to be given the account of the Fort Smith company until the invoice was paid, but that fact did not affect the validity of the assignment, as the assignment was for the purpose of collecting the invoice, at which time credit would have been given.

The witness stated that the St. Louis company knew the Fort Smith company had received the check, but he does not say when this information was acquired. He was being asked about complaint being made by the St. Louis company prior to June 15, 1922, which was, of course, long after the happening of the events out of which this litigation arose; nor did the witness state what part of the grocer company's draft was used to meet the payroll, nor on what account the acceptance was applied, nor whether all of the balance was paid on the acceptance, or, if the balance was paid to the St. Louis company, on what account it was paid.

The witness did not produce the assignment referred to by him as requested, and we do not know what obligations were included in it—what the known liabilities were to which the witness referred, and the burden of proving all this rested on the grocer company, even though this defense had been alleged.

It is insisted that there was a trade custom between the Fort Smith company and the St. Louis company whereby the former collected assigned invoices and remitted proceeds thereof to apply on account. But the answer set up no such defense, and we do not think the testimony established any such custom, even though it had been alleged.

In explanation of the letter from the grocer company under date of November 15, Wimberley testified that he did not intend by that letter to promise payment to the St. Louis company, but only intended to say that he would pay the invoice, and that he did pay it a few days later than he promised. In view of the inquiry of the St. Louis company in its letter under date of November 11, we do not think the reply of the grocer company is susceptible of any other construction than a promise to pay the St. Louis company within the time stated.

It is the insistence of the St. Louis company that the remittance was made to the Fort Smith company because that company had agreed to allow certain additional credits not shown on the original invoice. We do not consider that question, because a verdict was directed by the court in its favor. However, the verdict was directed for only the balance admitted to be due after all credits claimed by the grocer company had been allowed, and the St. Louis company has not cross-appealed.

The request for judgment over against the Fort Smith company appears to have been overlooked at the trial, or to have been considered as unimportant; at least the failure to render such judgment is not assigned as error in the motion for a new trial.

The undisputed testimony shows that there was an assignment of the invoice. This fact appears from the

recital on the face of the invoice itself, which Wimberley admits having seen upon its receipt.

At § 73 of the chapter on Assignments, in 5 C. J., p. 906, it is said: "Where the assignment is in writing, no special form of words or language is required to be used, although the operative words of an assignment generally used are 'sell, assign, and transfer,' or 'sell, assign, and set over.' It may be in the form of an order on the debtor or holder of the fund assigned to pay the debt or fund to another person. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it, will be sufficient to vest the property therein in the assignee. Of course, any statutory requirements as to the form of an assignment must be observed."

The correspondence and the telegrams show the assignment beyond question, and we think the grocer company's letter was an unequivocal promise to pay the invoice, and the grocer company was fully advised of this assignment when it made payment to the Fort Smith company.

"But payment to the assignor, or discharge or release by him after notice to the debtor of the assignment, is no defense to the claim of the assignee; nor may the debtor, after receiving such notice, acquire new obligations of the assignor and offset them to the prejudice of the assignee." Section 148, chapter on Assignments in 5 C. J., p. 960. *State v. Jennings,* 10 Ark. 428.

There was no testimony that the invoice was reassigned, or that authority was conferred on the Fort Smith company to collect it, and it is not contended that the St. Louis company had any knowledge of the correspondence passing between the grocer company and the Fort Smith company about the first of December which induced the grocer company to remit to the Fort Smith company, and it is not contended that the grocer company advised the St. Louis company that it had been directed to remit to the Fort Smith company, and the remittance

was made without advising the St. Louis company that this would be done.

Under these circumstances the grocer company paid the invoice to the Fort Smith company at its peril, and the judgment was properly directed for the plaintiff. Judgment affirmed.