TURNER *v.* RUST.

5-1416                                                 309 S. W. 2d 731

Opinion delivered January 20, 1958.

[Rehearing denied March 3, 1958]

*Carlton Currie; Tudor Hampton,* Great Bend, Kans., and *B. V. Hampton,* Pratt, Kansas, for appellant.

*Henry W. Gregory, Jr.,* and *John Harris Jones,* for appellee.

J. Seaborn Holt, Associate Justice. Appellant, Mary A. Turner, is the sole heir of John Rust who died January 20, 1954, being his daughter by a previous marriage. Appellee, Thelma Rust, is his surviving widow. John Rust was divorced from Mary's mother in 1927 and the mother was awarded Mary's custody, and later married a man by the name of Deitwiller. Deitwiller adopted Mary and Mary took the name of Deitwiller. Rust left a will dated 1936 in which no mention was made of appellant, Mary Turner.

Around 1930 Mr. Rust invented and patented a cotton picking machine and from this invention and patent rights he derived and accumulated considerable wealth. On December 27, 1944, he organized the World Foundation Trust, and as its sole trustee he administered this trust until December 1951. The purposes of the World Foundation were set out as: scientific, educational, philanthropic eleemosynary, and were enumerated in 20 separate paragraphs, some of which were clearly for business purposes and some charitable. On the same date that the World Foundation was organized Rust assigned to this trust a license agreement (made the previous April) between himself and Allis-Chalmers Manufacturing Company under which license Allis-Chalmers agreed to manufacture cotton picking machines under the patents held by Rust, and to pay royalties to Rust. In April 1949 World Foundation and Rust individually executed a license contract with Ben Pearson, Inc., of Pine Bluff to manufacture cotton picking machines under the Rust patents. All patents held by Rust were assigned to World Foundation in May 1950 and December 1951.

On December 22, 1951, World Foundation, through Rust individually and as its sole trustee, entered into a trust agreement with appellee, National Bank of Commerce, whereby it was agreed that the bank as trustee would "collect and receive all royalties from the two licensees" above and from all sources and disburse these funds to the former stockholders of "Rust Cotton Picking Company" (a company which was organized to assist Rust to complete and perfect the invention of the

cotton picking machine), to any other holders of royalty contracts and to World Foundation or its assigns as directed by the trust agreement which provided: "This trust shall continue and be effective until such time as the persons, firms and corporations described in Paragraph 2B, 2C and 2D hereof have been paid in full the amount set forth and described in said exhibits and this trust shall then terminate and all transfers, assignments, powers, authorities and directions herein contained shall revert to and be invested in Foundation." The bank so disbursed the funds coming into its hands, paying all claimants, amounting to more than $250,000 (except to three small claimants—totaling $1,000—who could not be found) and has returned any balance to the World Foundation.

Under the provisions contained in the World Foundation Trust, it was provided: "Acting by its Trustee, the trust reserves the right to make, alter, amend or repeal any provision of this trust, provided, however, that it shall not change its fundamental nature and purpose. It further reserves the right to liquidate its affairs and terminate its existence if the Trustee, in his sole discretion, shall determine such action to be necessary or desirable, provided, however, that in the event of such termination of its existence and such liquidation of its affairs, its net assets, after such liquidation, shall be conveyed to some other person, non-profit corporation, association or organization in trust for like objects and purposes, . . . John D. Rust is declared to be the sole Trustee of this trust, and the trust shall act solely, exclusively and only by and through its Trustee as to all acts, things, matters and powers herein contained . . ."

It appears undisputed that Rust owned individually all of the assets, which consisted of patent rights and royalties derived from the cotton picking machine, which went into the World Foundation and that he named himself sole trustee of that trust and in which, as indicated, he reserved the right to alter, liquidate and terminate the World Foundation just so long as he did not change the fundamental nature and purpose of the

World Foundation. On December 28, 1951, World Foundation by Assignment and Bill of Sale transferred one-half of its assets to John Rust Company, an Arkansas business corporation, and in consideration for which the John Rust Company transferred and delivered to the World Foundation Trust all of its authorized capital stock, consisting of 1,500 shares of preferred stock and 12,500 shares of its common stock. On December 29, 1951, World Foundation transferred, by Assignment and Bill of Sale, the remaining one-half of all of its assets to the John Rust Foundation, Inc., an Arkansas non-profit benevolent corporation. December 31, 1951, John D. Rust, trustee, liquidated and terminated the World Foundation Trust, transferring all of its net assets to The John Rust Foundation, Inc., by the following instrument:

"Termination of Trust—Know all Men by these Presents: Whereas, The World Foundation, a trust, John D. Rust, Trustee, has heretofore liquidated its affairs and transferred its net assets unto the John Rust Foundation, Incorporated an Arkansas corporation, organized for non-profit, charitable, educational literary and scientific purposes; and

"Whereas, the liquidation of the affairs of The World Foundation and the transfer of its net assets as above set forth were in accordance with the terms and provisions of the Declaration of Trust of the World Foundation, dated December 27, 1944, reference to which is hereby made, and the transfer of the operations, activities and net assets of the said World Foundation to The John Rust Foundation, Incorporated, the objects and purposes for which the said The World Foundation was organized and declared as a trust, was within the general intent and purpose of said Declaration of Trust; and

"Whereas, the original objects and purposes of the said The World Foundation can better be carried out and performed through the future operations, activities, objects and purposes of the said The John Rust Foundation, Incorporated; now

"Therefore, I, John D. Rust, Trustee and Executive Director of the said The World Foundation, acting within and in accordance with the powers and authority set forth in said written Declaration of Trust of December 27, 1944, do hereby declare the formal termination of the existence of the trust organized, declared and known as The World Foundation and, as its affairs and operations have thus been liquidated and its net assets transferred as above set forth, do hereby further cancel and bring to an end any and all operations, activities, objects and purposes of the said The World Foundation.

"Executed at Pine Bluff, Arkansas, on this 31st day of December, 1951. /s/ John D. Rust, Trustee of The World Foundation, a Trust."

It thus appears that with the Termination of the World Foundation Trust above, all assets of The World Foundation were transferred to The John Rust Foundation, Inc., a benevolent corporation.

In November 1954 the present suit was filed by Mary Turner, in which she alleged that she was the daughter of John D. Rust, that the World Foundation created no trust, was absolutely void, that the trust assignments to Rust Company and Rust Foundation carried only the bare legal title and that the beneficial interest remained in Rust until his death, at which time, she, as his daughter, was entitled to such beneficial interest and his entire estate, since Rust's widow, Thelma Rust, had released all interest in his estate. Appellees answered, denied all material allegations, and specifically alleged that Rust would have been estopped to claim an interest since he had acted as trustee of The World Foundation and was bound by his assignments and sales to Rust Company and Rust Foundation, and by his ratification and confirmation of the transfers, and that appellant, his sole heir, was estopped also.

On a trial and after an extended and patient hearing, the trial court found that the original trust (World Foundation) was void, but that appellant (Mary Turner) "is estopped by the conveyances and writings of

John Rust, through whom she claims, to attack the transfers to the defendants, John Rust Company and John Rust Foundation," and further "that though John Rust, Trustee, executed the assignments to defendants as Trustee, while he was at that time the individual owner of the beneficial interest, (because of the resulting trust) still he conveyed such beneficial interest, and was thereafter estopped to claim the property, which he purported to convey as Trustee. This is known as 'Estoppel by Deed' . . . 'intent' means a great deal in determining the validity or invalidity of various instruments. Numerous letters and a course of conduct for a long period of years convince me that John Rust had no desire to individually own any of his properties, it seems that almost from the beginning, he held the idea of a trust to benefit mankind, and persistently and consistently furthered this idea. I find nothing to indicate, much less establish, that he had a selfish or ulterior personal motive or simply devised a scheme to promote gain for himself in establishing the trust," and dismissed her complaint for want of equity. This appeal followed.

For reversal appellant contends that the World Foundation Trust was void from its inception and as a result John Rust, settlor, remained the sole owner of the assets described in the various sales and assignments in trust to The World Foundation, that "a resulting trust arose in Rust," and the beneficial interest remained in Rust, and at his death (January 20, 1954) reverted to appellant, his only heir, and all assets that Rust conveyed to the Rust Company and the Rust Foundation.

The conclusion we have reached makes it unnecessary to decide whether the World Foundation Trust was void in whole or in part, or valid in whole or in part. If The World Foundation were void, as appellant earnestly contends, then all the assets that went into it, which it is undisputed belonged to John Rust personally at the time, remained the property of John Rust and would revert to and remain in him to dispose of as he saw fit, as if no trust had been created. If the World Foundation were valid then under its specific terms, above, John Rust, as its sole trustee, had the power and right to term-

inate it and create out of its assets the two new trusts, the John Rust Company and the John Rust Foundation. He first created (December 28, 1951) the John Rust Company (a business corporation) from one-half of the assets of World Foundation, but as consideration this corporation transferred and delivered all of its capital stock to World Foundation. Thus, when one day later, December 29, John Rust as trustee of The World Foundation created The John Rust Foundation out of the remaining one-half of World Foundation assets, World Foundation actually owned all the assets of John Rust Company, and when later (December 31) John Rust, Trustee, terminated and liquidated the World Foundation Trust, he assigned, transferred and delivered all of its assets to The John Rust Foundation, to carry on the benevolent purposes for which World Foundation was formed.

We think that the above assignments,—which had the same force and effect as deeds,—effectively conveyed all of Rust's interest in the assets involved, including any beneficial interest by resulting trust or otherwise, that he had, all clearly in accordance with his intentions, as the chancellor found. Obviously, we think the burden of proof was on appellant, plaintiff in the trial court. "The party holding the affirmative of an issue must produce the evidence to prove it," Sec. 28-101 Ark. Stats. 1947.

We agree with the chancellor that appellant is estopped to claim any interest, beneficial or otherwise, by the various assignments and sales above made by John Rust, as trustee of World Foundation. The general rule applicable here as to these assignments is stated by the author of 6 C. J. S. Sec. 83, p. 1138 and Sec. 84 p. 1139, in this language: "An assignment will, ordinarily, be interpreted or construed in accordance with the rules of construction governing contracts generally, the primary object being always to ascertain and carry out the intention of the parties . . . To be valid, the assignment must adequately describe or identify the property or thing intended to be assigned (see *supra* Sec. 44); but, when such a description is inserted, the assign-

ment, ordinarily passes to the assignee all of the rights, title, or interest of the assignor in or to the property or property rights that are comprehended by the terms used, or are within the intention or understanding of the parties, as ascertained in accordance with the general rules of construction; . . ."

As indicated, the trial court held that appellant (claiming as the sole heir of John Rust); was estopped to attack John Rust's transfers and assignments to appellees under the doctrine of estoppel by deed, and we think correctly so. In the circumstances she stands in the same position as John D. Rust, her father, would have been had he sought to overturn those assignments and transfers. In this connection appellant argues that the World Foundation, being an invalid trust, held only naked legal title to the patents and license agreements, the entire beneficial interest being in Rust individually because of a resulting trust. Even so, we hold that the doctrine of estoppel by deed applies here, as the chancellor held, and that appellant is effectively estopped to claim her father's beneficial interest. A grantor is estopped to assert anything in derogation of his deed. " 'No man shall be allowed to dispute his own solemn deed.' Thus a specific recital in a deed, to the effect that the grantor has title to or that he is in possession of the land conveyed, will estop him from asserting the contrary as against the grantee." *Henry* v. *The Texas Company,* 201 Ark. 996, 147 S. W. 2d 742. The rule of estoppel by deed is also applicable in the assignment of patent rights and interest. "Further, the assignor cannot derogate from his own grant and thus he is estopped to deny his title, or to claim title against his assignee, as is a legatee of the assignor where the assignments had been executed but not recorded." 69 C. J. S., Sec. 236, p. 750. "The analogy between estoppel in conveyances of land and estoppel in assignments of a patent right is clear. If one lawfully conveys to another a patented right . . . , fair dealing should prevent him from derogating from the title he has assigned, just as it estops a grantor of a deed of land from impeaching the effect of his solemn act as against his grantee." *Westing-*

*house Co.* v. *Formica Co.*, 266 U. S. 342, 350, 45 S. Ct. 117, 69 L. Ed. 316.

No error appearing, the decree is affirmed.

HARRIS, C. J., disqualified and not participating.