## NORTHWEST NAT'L BANK *v.* MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

CA 88-34 757 S.W.2d 182

Court of Appeals of Arkansas
Division II
Opinion delivered September 28, 1988

280

*Law Offices of E. Lamar Pettus,* by: *Harry McDermott III,* for appellant.

*Hilburn, Calhoon, Harper & Pruniski, Ltd.,* by: *Scott Daniel,* for appellee.

BETH GLADDEN COULSON, Judge. In this appeal from a decision of the Washington County Chancery Court, appellant, Northwest National Bank, raises two points for reversal. We find neither argument persuasive and affirm.

On August 23, 1984, James Dickson executed a $35,000 note to appellant bank. The note stated that it was secured by a security agreement covering assignment of various Merrill Lynch accounts. A standard financing statement and security agreement form dated August 23, 1984, signed by Dickson and appellant bank, stated that Dickson granted to appellant bank (the "Secured Party") a "Security Interest pursuant to the Uniform Commercial Code" in the property described. File numbers were appended to each case. The property description was prefaced with the phrase: "Assignment of fees payable to James F. Dickson for the following Merrill Lynch cases." The printed language of the form also stated that this security interest included "all replacements thereof and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith (hereinafter collectively called the "Goods"); and. . . UNTIL DEFAULT hereunder, Debtor shall be entitled to the possession of the Goods and to use and enjoy the same."

On November 1, 1984, appellant bank hand delivered a letter to the Fayetteville branch of appellee Merrill Lynch, Pierce, Fenner & Smith, Inc., which stated that:

> Mr. James Dickson has pledged as collateral on a loan at Northwest National Bank accounts receivable from Merrill Lynch, Pierce, Fenner [&] Smith, Inc. (Paramount Petroleum, Ray Lofton, William Christensen, George Hernreich, Steve LaFontain, First National Bank of Little Rock, Jerry Dan McBride, Butch McCallum, Bill Kersey,

Larry Cabelka, CMI Investments [,] Allied Electric and Electric Service Co. of Ft. Smith, Goff, and Epley).

Please mark your records so that payments are made to Mr. Dickson and Northwest National Bank.

A copy of the August 23, 1984, financing statement and security agreement was attached to the letter.

Appellant bank and Dickson subsequently extended the due date on the note to April 15, 1986, by executing five extension agreements which all stated that the collateral securing the original obligation would continue to secure the amended obligation. No other agreements or instruments were executed by the parties. Between August 23, 1984, and the due date, appellant bank accepted various payments of principal and interest from Dickson. When the note became due on April 15, 1986, Dickson failed to pay the outstanding balance of $10,782.54 to appellant bank.

Frances Sabbe, a loan officer with appellant bank, wrote Dickson a letter on September 22, 1986, notifying him that his loan was "seriously delinquent" and requesting a conference for discussion of a plan for repayment. On October 28, 1986, appellant bank's attorney wrote to the Fayetteville branch of appellee Merrill Lynch, advising that no payment of Dickson's legal fees had been received and requesting an accounting. Receiving no reply to either letter, appellant bank filed suit against Dickson and appellee Merrill Lynch, praying for a judgment against Dickson and an accounting and judgment against appellee Merrill Lynch.

At trial, on September 22, 1987, only two persons testified: Frances Sabbe on behalf of appellant bank and Paula Sutton, administrative manager of appellee Merrill Lynch in Little Rock, Arkansas. James Dickson did not testify. In a judgment filed on October 7, 1987, the chancellor found for appellant bank against Dickson but dismissed the cause of action against appellee Merrill Lynch, finding that even though appellee had been notified of the security agreement between appellant and Dickson on November 1, 1984, the security agreement did not constitute an assignment, and the November 1, 1984, letter from appellant to appellee had no legal effect. From that decision, this appeal

arises.

Appellant argues, in its first point for reversal, that the chancellor erred in ruling that the note and security agreement between James Dickson and Northwest National Bank did not constitute an assignment to appellant bank of the legal fees owed Dickson by Merrill Lynch. On appeal, chancery cases are tried de novo on the record; we will not reverse the findings of the chancellor unless they are clearly erroneous, *i.e.*, clearly against the preponderance of the evidence. A.R.C.P. Rule 52(a); *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 642 (1986). We give due regard to the opportunity of the trial court to assess the credibility of the witnesses. *Special Insurance Services, Inc.* v. *Adamson*, 20 Ark. App. 8, 722 S.W.2d 875 (1987).

When accounts receivable are assigned to secure the performance of a debt, the account debtor, under Ark. Code Ann. § 4-9-318(3) (1987) "is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." Appellant contends that the preponderance of the evidence shows that an assignment had been made, that Northwest National Bank had notified appellee of its status as assignee and that payment should have been made to appellant bank.

The Arkansas Supreme Court, in *Robinson* v. *City of Pine Bluff*, 224 Ark. 791, 276 S.W.2d 419 (1955), held that, to constitute an assignment, no particular words are necessary. The court, quoting *Edison, et al.* v. *Frazier*, 9 Ark. (4 Eng.) 219 (1848), defined an assignment as "the setting over, or transferring, the interest a man hath in anything to another," and emphasized that an assignment is an expression of intention by the assignor that his rights should pass to the assignee. 224 Ark. at 794, 276 S.W.2d at 421.

In *Turner* v. *Rust*, 228 Ark. 528, 309 S.W.2d 731 (1958), the Arkansas Supreme Court noted that an assignment is generally interpreted or construed under the rules governing construction of contracts, with the primary object always being to ascertain and carry out the intention of the parties. To insure validity, the assignment must adequately describe or identify the property or thing to be assigned, "but, when such a description is

inserted, the assignment ordinarily passes to the assignee all of the rights, title, or interest of the assignor in or to the property or property rights that are comprehended by the terms used, or are within the intention or understanding of the parties, as ascertained in accordance with the general rules of construction." 228 Ark. at 534-535; 309 S.W.2d at 735. Where a contract is ambiguous, the court will accord considerable weight to the construction given to it by the parties themselves, evidenced by subsequent statements, acts, and conduct. *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co., supra.*

■ The chancellor in the present case recognized that there was undoubtedly a security agreement but held that "the bank could not unilaterally impose a duty of payment on Merrill Lynch simply by virtue of that instrument," despite the use of the term "assignment" in the document. As the Arkansas Supreme Court stated in *Wimberley Grocery Co.* v. *Border City Broom Co.*, 166 Ark. 570, 266 S.W. 679 (1924):

> At § 73 of the chapter on Assignments, in 5 C.J., p. 906, it is said: "Where the assignment is in writing, no special form of words or language is required to be used, although the operative words of an assignment generally used are 'sell, assign, and transfer,' or 'sell, assign, and set over.' It may be in the form of an order on the debtor or holder of the fund assigned to pay the debt or fund to another person. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it, will be sufficient to vest the property therein in the assignee."

166 Ark. at 577, 266 S.W. at 682. While no particular words are necessary to constitute an assignment, the traditional language of assignment may be used by a court as an indication of the intention of the parties to effect an assignment. The chancellor here found no such suggestion of intent.

Frances Sabbe, appellant bank's own witness, testified that there was "no separate document called an assignment"; only the financing statement and security agreement existed to show a relationship among the parties. She verified that the "assignment" of Dickson's fees, reflected in those instruments, was for the purpose of providing collateral on the loan. The ultimate

purpose, then, of the assignment language on the two forms was to provide a means of perfecting a security interest in the accounts receivable.

In the security agreement, it was provided that "UNTIL DEFAULT hereunder, Debtor shall be entitled to the possession of the Goods and to use and enjoy the same." If, as appellant bank suggests, this language creates an ambiguity, the contract, prepared by Northwest National Bank, must be strictly construed against it, *Gilstrap* v. *Jackson*, 269 Ark. 876, 601 S.W.2d 270 (1980), in the light of the subsequent statements, acts, and conduct of the parties, *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co., supra*. During the twenty-six months between the time the loan was made, in August, 1984, and the time it was declared in default, in October, 1986, appellant bank continued to accept payments of principal and interest from Dickson, who continued to collect fees on the cases described in the security agreement. Frances Sabbe acknowledged that, under the agreement, Dickson was permitted to collect those fees until the time of default. It is therefore unfeasible for the security agreement in this case to be considered at the same time an assignment. It would have been a clear expression of intent for the parties here to have executed a separate oral or written agreement. For example, in *Newton* v. *Merchants & Farmers Bank of Dumas*, 11 Ark. App. 167, 668 S.W.2d 51 (1984), a letter, separate from a consumer note and security agreement, provided:

> I, Kenneth Rogers, D/B/A Ken Rogers Plumbing Co., hereby assigns [sic] set over and deliver to Merchants and Farmers Bank of Dumas, Arkansas, a certain subcontract between Wayne Newton Construction Company of Magnolia Arkansas and Delta Lodge Motel, in the amount of $22,100, dated February 11, 1981.

11 Ark. App. at 170, 668 S.W.2d at 52. No such independent agreement was made in the present case, and the chancellor was not clearly erroneous in ruling that the note and security agreement did not constitute an assignment to appellant bank of the legal fees owed James Dickson by appellee Merrill Lynch.

In its second point for reversal, appellant bank contends that the chancellor erred in ruling that the letter dated November 1, 1984, from Northwest National Bank to appellee Merrill Lynch

had no legal and binding effect. The chancellor's rationale was that because no valid assignment had been made, the letter was merely notice from the bank to Merrill Lynch that there was a security agreement between appellant and Dickson. We agree.

The text of the letter of November 1, 1984, nowhere indicates that an assignment has been made. There appears a statement that "Mr. James Dickson has pledged as collateral on a loan at Northwest National Bank accounts receivable from Merrill Lynch, Pierce, Fenner [&] Smith, Inc." and a request that appellee Merrill Lynch "mark your records so that payments are made to Mr. Dickson and Northwest National Bank." The attached copy of the financing statement and security agreement showed only that appellant bank had been granted a security interest in the accounts receivable and that Dickson was entitled to possession of those "goods" until default. Neither the security agreement nor the letter provided appellee instruction regarding the amount of money involved, the time when payments were to begin, or the duration of the purported assignment.

The record clearly reveals that Dickson made payments under the terms of his note until the extended due date of April 15, 1986. Appellant bank's witness, Frances Sabbe, who signed the November 1, 1984, letter, testified that she did not consider the loan in default until October 28, 1986, the date on which Northwest National, through its attorney, made demand upon appellee Merrill Lynch for payment of Dickson's fees. At no time prior to default, however, was appellee informed of the various loan extensions granted Dickson by appellant or asked for an accounting of fees owed or paid to Dickson.

These actions and omissions indicate that appellant bank considered the transaction to be governed by the Uniform Commercial Code's provisions on the secured party's collection rights:

> When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral and also to take control of any proceeds to which he is entitled.

Ark. Code Ann. § 4-9-502(1) (1987). Similarly, Ark. Code Ann. § 4-9-503 (1987) provides that "Unless otherwise agreed, a secured party has on default the right to take possession of the collateral." No other agreement was made, and appellant did not seek the accounts receivable before default. By its own conduct appellant bank seemed to have regarded its letter of November 1, 1984, as nothing more than notice to appellee Merrill Lynch of the existence of the security agreement. The evidence does not suggest that the chancellor was clearly erroneous in deciding that the letter had no legal and binding effect.

 Appellee Merrill Lynch, in its brief, renewed its motion to strike Appendix A from appellant's brief on the grounds that it is not a part of the record and violates Rule 9(d) of the Rules of the Supreme Court and Court of Appeals. Appellant's Appendix A consists of a photocopy of a consumer note and security agreement from the record in *Newton* v. *Merchant & Farmers Bank of Dumas, supra.* As it is not a part of the record in this case it was not considered and the motion to strike is moot.

Affirmed.

MAYFIELD and COOPER, JJ., agree.