# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————

No. 10-6057

———————

In re:                                          *
                                                *
Elizabeth E. Nail,                              *
                                                *
         Debtor.                                *
                                                *
Arvest Mortgage Company,                        *         Appeal from the
                                                *         United States
         Plaintiff - Appellee,                  *         Bankruptcy Court for the
                                                *         Western District of Arkansas
              v.                                *
                                                *
Elizabeth E. Nail,                              *
                                                *
         Defendant - Appellant.                 *

No. 10-6061

In re:  Elizabeth E. Nail,                 *
                                           *
            Debtor.                        *
                                           *
Arvest Mortgage Company,                   *        Appeal from the
                                           *        United States
            Plaintiff - Appellant,         *        Bankruptcy Court for the
                                           *        Western District of Arkansas
            v.                             *
                                           *
Elizabeth E. Nail,                         *
                                           *
            Defendant - Appellee.          *


Submitted: March 1, 2011
Filed:   April 15, 2011


Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Elizabeth E. Nail appeals from the judgment of the bankruptcy court determining that her failure to turn over $46,016.25 in lawsuit settlement proceeds to Arvest Mortgage Company and the Federal National Mortgage Association (together, "Creditor") resulted in a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4). The Creditor cross-appeals, arguing that the bankruptcy court should have found the non-dischargeable debt to be $65,000, the gross amount of the settlement. We have jurisdiction over this appeal and cross-appeal. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

## ISSUES

As framed by the parties, the issues on appeal are: (1) whether the Debtor assigned to the Creditor the proceeds of a settlement that the Debtor received from a lawsuit against the builders of a house she purchased; and (2) whether the Debtor's failure to remit such proceeds to the Creditor is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4) as a debt for defalcation by the Debtor while acting in a fiduciary capacity.[1] The issue presented by the cross-appeal is whether the Debtor was entitled to reduce the debt excepted from her discharge.

A threshold issue, however, is whether the settlement proceeds of $65,000 were captured as "Miscellaneous Proceeds" under the terms of the mortgage that the Debtor executed in favor of Arvest National Bank ("Arvest"). We hold that the settlement proceeds were not, in fact, Miscellaneous Proceeds as defined in the mortgage. We further hold that, if the settlement proceeds are determined to be Miscellaneous Proceeds arising from a tort action, they could not be validly assigned to Arvest under Arkansas law. Finally, we hold that, if the settlement proceeds are determined to be Miscellaneous Proceeds under either a contract or tort theory, the Arkansas statutes relied on by the bankruptcy court did not create a trust giving rise to a fiduciary duty under § 523(a)(4) that would require the Debtor to pay the settlement proceeds to the Creditor. Therefore, there is no basis for a non-dischargeable debt under § 523(a)(4). Having reached these conclusions, we need not consider the issue raised in the cross-appeal.

## BACKGROUND

The Debtor obtained a loan from Arvest in 2006 to purchase a newly constructed residence and executed a promissory note and mortgage (the "Mortgage") in favor of Arvest. After purchasing the house, the Debtor discovered certain

---

[1] The Creditor also argued that the bankruptcy court could have excepted the alleged debt from the Debtor's discharge as one for embezzlement. Based on our holding regarding whether the Debtor assigned the settlement proceeds to the Creditor and on the bankruptcy court's failure to address the embezzlement claim, we do not consider the Creditor's embezzlement argument.

construction defects but was unable to persuade the builders to remedy them. At about the same time, according to Arvest, the Debtor began missing her mortgage payments. Although it declined to join in a lawsuit against the builders, Arvest granted the Debtor two consecutive six-month forbearance periods beginning in February 2007 so she could prosecute an action against the builders. The parties agree that the Debtor's state court lawsuit against the builders alleged tort and contract causes of action.[2] According to Arvest, the Debtor did not resume making her mortgage payments to Arvest after the forbearance periods expired.

The Debtor settled the state court lawsuit in January 2008 after arbitration. She received $65,000 from the builders.[3] While Arvest was aware of the state court lawsuit, it maintains that it did not learn of the settlement and the Debtor's receipt of the $65,000 until some six months later, in July 2008. The Debtor did not remit any of the settlement proceeds to Arvest. Rather, she spent the proceeds to pay attorneys fees for the state court lawsuit, to pay for repairs and remodeling on her new home, and to pay credit card debt.

The Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on April 28, 2009.

Arvest obtained relief from the automatic stay in the Debtor's bankruptcy case and completed a judicial foreclosure that it had commenced pre-petition on the property. Arvest purchased the property at the foreclosure sale and then transferred title of it to Federal National Mortgage Association ("Fannie Mae"). Arvest stated

---

[2] The parties also do not dispute that the state court action included a count for piercing the corporate veil as well.

[3] The state court complaint and documentation of the state court settlement between the builders and the Debtor were admitted as exhibits at trial, but the parties did not provide to us copies of these documents.

that the price it paid to purchase the property at the foreclosure sale was less than the amount owed by the Debtor on the loan.

Arvest then brought an adversary proceeding in the Debtor's bankruptcy case. It asserted causes of action against the Debtor under 11 U.S.C. § 523(a)(2)(A), based on false pretenses, false representation or actual fraud, and under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity or for embezzlement or larceny.[4] The Debtor moved to dismiss the complaint for failure to prosecute in the name of Fannie Mae as the real party in interest. During the trial, the bankruptcy court granted the Debtor's motion for a directed verdict on the § 523(a)(2)(A) cause of action.[5]

On April 9, 2010, the bankruptcy court entered an order determining that a debt owed from the Debtor to the Creditor was excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4), based on the Debtor's defalcation while acting in a fiduciary capacity. It determined that the settlement proceeds were assigned to the Creditor pursuant to a provision of the Mortgage assigning all "Miscellaneous Proceeds" to the Creditor. In response to Arvest's argument that the Mortgage document created an express trust, the court explained that despite the fact that "there is no language in the [M]ortgage that specifically creates a trust and § 523(a)(4) does not reach constructive trusts . . . there is . . . an express trust recognized under Arkansas law and in accord with the terms of the [M]ortgage." The court did not find fraudulent intent by the Debtor in her use of the settlement proceeds, but determined that the Debtor committed defalcation while acting in a fiduciary capacity. It did not decide whether the Debtor had embezzled the settlement funds.

---

[4] The Creditor did not pursue the larceny claim at trial or on appeal.

[5] The Creditor has not challenged the bankruptcy court's grant of the directed verdict.

The bankruptcy court also determined that even though Arvest had standing to bring its cause of action, it was not the real party in interest based on its transfer of the property to Fannie Mae after the foreclosure sale. It noted that, according to a representative from Arvest, after title to the property was transferred to Fannie Mae, Arvest's only interest in the adversary proceeding was "whether Fannie Mae is going to absorb the loss." The court required Arvest to provide a copy of the order to Fannie Mae "in sufficient time to allow Fannie Mae to ratify, join or be substituted in [the] adversary proceeding," explaining that if Fannie Mae did not comply, the Debtor's motion to dismiss would be granted. Fannie Mae filed its declaration of ratification on May 6, 2010.

Also in the April 9, 2010 order, the bankruptcy court indicated that it would enter a judgment against the Debtor and in favor of the Creditor for the amount of $65,000, subject to a reduction for the Debtor's expenses and costs incurred in the state court lawsuit. For this purpose, the court required the Debtor to file an accounting of her costs and expenses.

On July 16, 2010, the bankruptcy court entered an order accepting an accounting submitted by the Debtor, in part, subject to certain disallowed expenses specified at the hearing, and indicating that it would enter a separate judgment.[6] The bankruptcy court entered a judgment, incorporating its April 9, 2010 and July 16, 2010 orders, in favor of Arvest and Fannie Mae and against the Debtor in the amount of $46,016.25 ($65,000 less the Debtor's approved fees and expenses in obtaining the settlement), plus interest at the highest rate allowed by law.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error, and its conclusions of law and conclusions regarding mixed questions of law and fact *de*

---

[6]     The July 16, 2010 order also denied a motion by Arvest for attorneys' fees and costs.

*novo. DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006) (citation omitted). The bankruptcy court's interpretation of state law is reviewed *de novo. Luxton v. U.S.*, 340 F.3d 659, 662 (8th Cir. 2003) (citation omitted); *Kuelbs v. Hill*, 615 F.3d 1037, 1041 (8th Cir. 2010), *cert. denied,* --- S.Ct.----, 2011 WL 940906 (Mar. 21, 2011); *Reuter v. Fields (In re Reuter)* 443 B.R. 427, 433 (B.A.P. 8th Cir. 2011) (citation omitted).

## DISCUSSION

The ultimate issue in this case, as the parties have argued, concerns whether the Debtor owed a debt to the Creditor that was non-dischargeable under 11 U.S.C. § 523(a)(4), which provides that a bankruptcy discharge does not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." However, to reach that ultimate issue, we must determine whether the settlement proceeds were "Miscellaneous Proceeds" as defined in the Mortgage, whether the settlement proceeds (assuming they constituted "Miscellaneous Proceeds") could be validly assigned to Arvest, and (again assuming they constituted "Miscellaneous Proceeds") whether the Arkansas statutes established an express trust meeting the requirements of § 523(a)(4).

According to the Creditor and the bankruptcy court, the settlement proceeds were assigned to the Creditor under the Mortgage. The Creditor further maintains that a debt for the amount of the settlement proceeds (without subtracting the Debtor's expenses and costs in the state court lawsuit) is excepted from the Debtor's discharge as the bankruptcy court determined, based on "an express trust recognized under Arkansas law and in accordance with the terms of the [M]ortgage." We disagree.

We hold that the settlement proceeds were not, in fact, Miscellaneous Proceeds as defined in the Mortgage.

The Mortgage provides, in pertinent part:

**DEFINITIONS**

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for; (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**11.    Assignment of Miscellaneous Proceeds; Forfeiture**.    All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

To be Miscellaneous Proceeds, the settlement proceeds would have to be from the items described in sections (i) and (iv) of Paragraph (L); for "damage to, or destruction of, the Property" or "misrepresentations of, or omissions as to, the value and/or condition of the Property," which both refer to tort causes of action. But the bankruptcy court did not specify whether the settlement proceeds were derived from the tort or contract causes of action (or both) asserted by the Debtor in her state court lawsuit. Under Arkansas law, "it is the business of the trial court to determine whether an action sounds more in contract or in tort . . . ") (citations omitted). *Mallory v. Hartsfield, Almand & Grisham, LLP,* 86 S.W.3d 863, 866 (Ark. 2002). The bankruptcy court merely explained that "the [settlement] proceeds came into the [D]ebtor's hands as a result of a settlement relating to the condition of the property and, as such, are [M]iscellaneous [P]roceeds under the terms of the [M]ortgage."

In addition, the Creditor has not supplied this Court with the state court lawsuit pleadings or the settlement documents, so this Court is unable to determine whether the bankruptcy court considered the question of whether the settlement proceeds were derived from tort or contract causes of action and, if it did, what its findings were in

that regard. Based on the Debtor's and the Creditor's agreement that the settlement documentation was silent regarding the counts of the state court complaint for which the settlement funds were paid, it is possible that the builders admitted no liability on either a tort or contract theory, in which case it would appear that no determination has been made on this question.

In the absence of such findings or admissions, we hold that the settlement proceeds were not proven to fall under section (i) or (iv) of Paragraph (L) and, thus, could not be Miscellaneous Proceeds. The Creditor has simply not provided support for the proposition that the settlement proceeds are recoverable by the Creditor as one of the items discussed in sections (i) or (iv) of Paragraph (L).

Secondly, the Debtor could not have assigned the settlement proceeds to the Creditor.

The Arkansas Supreme Court "recognized that '[a]n assignment is an expression of intention by assignor that his rights shall pass to the assignee.' " *Stuttgart Reg. Med. Ctr. v. Cox*, 33 S.W.3d 142, 145 (2000) (quoting *Robinson v. City of Pine Bluff,* 276 S.W.2d 419, 421 (Ark. 1955)); *see also Beal Bank S.S.B. v. Thornton*, 19 S.W.3d 48, 51 (Ark Ct. App. 2000) ("[T]he assignor must intend to transfer a present interest in the subject matter of the contract.") (citation omitted). Assignments are normally construed in accordance with the rules for contract interpretation. *Northwest Nat'l Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 S.W.2d 182, 184 (Ark. Ct. App. 1988). The elements of an assignment in Arkansas are "delivery of the subject matter with the intent to make an immediate and complete transfer of all right, title, and interest from the assignor to the assignee." *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008) (citation omitted). Under Arkansas law, "whether an assignment occurred is a question of fact for the trial court." *Beal Bank*, 19 S.W.3d at 51 (citation omitted).

"To constitute an assignment, no particular words are necessary." *Robinson,* 276 S.W.2d at 421. An assignment "must adequately describe or identify the property or thing to be assigned." *Merrill Lynch*, 757 S.W.2d at 184. When a description of the property or thing to be assigned is included, normally the assignment will pass to the assignee the interest of the assignor "in or to the property or property rights that are comprehended by the terms used, or are within the intention or understanding of the parties, as ascertained in accordance with the general rules of construction." *Id*. at 184 (citation omitted) (internal quotation marks omitted).

To the extent the settlement proceeds paid to the Debtor were from a tort action – which we do not believe they would be – the assignment of such tort proceeds would be ineffective as a violation of Arkansas law. Tort claims and the proceeds of tort claims are excluded from the scope of assignments permitted under Arkansas law. *Kuelbs*, 615 F.3d at 1041 (citation omitted); *Mallory,* 86 S.W.3d at 866 (citing *Southern Farm Bureau Cas. Ins. Co. v. Wright Oil Co.*, 454 S.W.2d 69 (Ark. 1970)).

The statutes upon which the bankruptcy court relied to determine the existence of a fiduciary relationship and to except a debt from the Debtor's discharge, §§ 4-58-102 and 105 of the Arkansas Code, discuss assignments, but they do not create an assignment where one does not exist. Section 4-58-102 provides that "[a]ll bonds, bills, notes, agreements, and contracts in writing for the payment of money or property, or for both money and property, shall be assignable." ARK CODE ANN. § 4-58-102. Section 4-58-105 provides, in part, that:

> (a) Every written assignment made in good faith, whether in the nature of a sale, pledge, or other transfer, or on account receivable or any moneys due or to become due on an open account or on a contract, except for wages or salaries, all of which shall be hereinafter referred to as "account", with or without the giving of notice of the assignment to the debtor, *shall be valid and complete at the time of the making of the assignment and shall be deemed to have been fully perfected at that time*.

-10-

(b)(1) After an assignment made in good faith is complete, no bona fide purchaser from the assignor, no creditor of the assignor, and no other assignee or transferee of the assignor in any event shall have or be deemed to have acquired any right or interest in the account so assigned or transferred or in the proceeds thereof or in any obligation substituted therefor, superior to the rights and interest therein of the assignee.

(2) In any case where, acting without knowledge of the assignment or transfer, the debtor in good faith pays all or part of such account to the assignor or to the creditor, subsequent purchaser, or other assignee and transferee, all payments so made shall be acquittance to the debtor to the extent thereof, and the assignor . . . *shall be a trustee of any sums so paid and shall be accountable and liable to the prior assignee thereof.*

ARK CODE ANN. § 4-58-105 (emphasis added).

Without an assignment of Miscellaneous Proceeds that would create an underlying obligation for the Debtor to turn the settlement proceeds over to the Creditor, there is no basis for a determination of non-dischargeability under § 523(a)(4).

Finally, even if it should be determined that the settlement proceeds were Miscellaneous Proceeds under the Mortgage and that they were validly assigned to Arvest, we hold that neither the Mortgage nor §§ 4-58-102 and 105 created a trust that would trigger the application of § 523(a)(4)'s fiduciary obligations.

Exceptions to discharge are usually "strictly construed against the creditor, in furtherance of the policy of providing the debtor with a fresh start in bankruptcy." *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001) (citations omitted). To except a debt for the settlement proceeds from the Debtor's discharge for defalcation while acting in a fiduciary capacity, the Creditor must prove: (1) the existence of a fiduciary relationship between the Debtor and Creditor; and (2) commission of defalcation by the Debtor in the course of that fiduciary relationship. Because we hold that no fiduciary relationship existed between the Debtor and the

Creditor, we need not address whether the Debtor committed defalcation in the course of such a relationship.

The issue of whether a relationship is a fiduciary relationship under § 523(a)(4) is a question of federal law. *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir. 1997) (citation omitted), *cert. denied,* 118 S.Ct. 1044 (1998). "It has long been established that the Bankruptcy [Code] reference to 'fiduciaries' applies only to trustees of express trusts." *Barclays Am./Buss. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878 (8th Cir. 1985)(citation omitted); *Cochrane*, 124 F.3d at 984 (fiduciary relationship must arise from express or technical trust). In addition, the debtor "must have been a trustee before the wrong and without reference thereto." *Hunter v. Philpott,* 373 F.3d 873, 877 (8th Cir. 2004) (quoting *Davis v. Aetna Acceptance Co.*, 55 S.Ct. 151, 153 (1934))(quotation marks omitted).

Like the bankruptcy court, we do not see language in the Mortgage expressly creating a trust for the settlement proceeds.[7] Rather, the Mortgage simply provides for assignment and payment of Miscellaneous Proceeds to the Creditor and explains how Miscellaneous Proceeds should be applied by the Creditor.

The Debtor and Creditor disagree regarding whether §§ 4-58-102 and 105 could form the basis for a trust that imposes fiduciary duties under § 523(a)(4). Here, 4-58-102 and 105 did not suffice to establish a trust relationship under § 523(a)(4). While "a statute or state law may create fiduciary status . . . which is cognizable in bankruptcy proceedings," to meet the requirements of § 523(a)(4), the debtor must be a trustee "in the strict and narrow sense." *Id. Long*, 774 F.2d at 878-79 (citation omitted). "It is the substance of a transaction, rather than the labels assigned by the

---

[7]    At trial, the Creditor argued that the Mortgage document itself established an express trust. On appeal, the Creditor changed the focus of its argument; maintaining that the bankruptcy court properly determined that an express trust existed pursuant to Arkansas law "in accord with the terms of the Mortgage."

parties, which determines whether there is a fiduciary relationship for bankruptcy purposes." *Id.* (citation omitted). A fiduciary relationship under § 523(a)(4) is not as broadly defined as that required under general common law. *Shahrokhi,* 266 B.R. at 707 (citing *Long*, 774 F.2d at 878). "The broad general definition of fiduciary - a relationship involving confidence, trust and good faith - is inapplicable." *Id.* (citation omitted).

Section 4-58-105 simply explains what happens when party owing an "account," acting in good faith and without knowledge of the assignment, pays the "account" to the assignor rather than to the assignee. It would acquit the party owing the "account" from liability and make the Debtor responsible to the Creditor for such funds. The mere use of the word "trustee," when viewed in the context of §§ 4-58-102 and 105 as a whole, does not reflect a legislative intent to create a fiduciary relationship "in the strict and narrow sense" required under § 523(a)(4). The facts of this case do not suggest the existence of a fiduciary relationship under § 523(a)(4). As we have explained, it is unclear that the settlement proceeds were Miscellaneous Proceeds in the first instance and, if they were, that they were validly assigned to the Creditor. The Debtor and Creditor had, at most, a mere contractual relationship, and it is well-recognized that a fiduciary relationship does not arise simply by virtue of a contractual relationship. *Hunter*, 373 F.3d at 875-76 (citations omitted) ("We are not satisfied that the simple determination that an individual is an ERISA fiduciary is enough to satisfy the requirement of § 523(a)(4).").

## CONCLUSION

In summary, we determine that the settlement proceeds received by the Debtor from her state court action against the home builders were not "Miscellaneous Proceeds" under the Mortgage. We further hold that, if the settlement proceeds should be determined to be Miscellaneous Proceeds arising from a tort action, they could not be validly assigned to the Creditor under Arkansas law. Finally, we hold that, if the

settlement proceeds should be determined to be Miscellaneous Proceeds under either a contract or tort theory, the Arkansas statutes relied on by the bankruptcy court did not create an express trust giving rise to a fiduciary duty under § 523(a)(4) that would require the Debtor to pay the settlement proceeds to the Creditor. Absent such a fiduciary duty, there cannot be a non-dischargeable debt under § 523(a)(4).

For the foregoing reasons, we reverse the decision of the bankruptcy court.

_____